**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2289-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL R. GIULIANO, a/k/a
MICHAEL R. GUILIANO,

    Defendant-Appellant.

_____

> Submitted July 15, 2020 – Decided July 29, 2020
>
> Before Judges Hoffman and Currier.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-06-0703.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Suzannah Brown, Designated Counsel, on the brief).
>
> Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Milton Samuel Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Michael Giuliano appeals from the October 31, 2018 denial of his petition for post-conviction relief (PCR) after an evidentiary hearing, contending trial counsel was ineffective in depriving him of the opportunity to accept a favorable plea offer. We affirm.

Defendant was charged in an indictment with first-degree armed robbery, N.J.S.A. 2C:15-1; third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and third-degree theft, N.J.S.A. 2C:20-3. The charges arose out of the armed robbery of a pharmacy and theft of controlled drugs.

After a trial, a jury found defendant guilty on all counts. He was sentenced to fifteen years in prison, subject to an eighty-five percent period of parole disqualification under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On appeal, we affirmed the convictions but remanded for the limited purposes of merger and jail credit review. State v. Giuliano, No. A-5041-12 (App. Div. Mar. 2, 2016) (slip op. at 9). After pleading guilty to another indictment, defendant was sentenced to an additional five years incarceration with an eighty-five percent period of parole disqualification to run concurrently with the first sentence.

Defendant filed a pro se PCR petition. He included a certification from his initial trial counsel, Vincent J. Sanzone, Jr., and an affidavit from his wife, Liza Giuliano. Defendant asserted the State made an aggregate plea offer of ten years imprisonment with an eighty-five percent period of parole disqualification under NERA (ten-year offer). He contended this offer was made on June 29, 2012 while he was represented by Sanzone. The offer was to encompass the four pending indictments against defendant.

Defendant did not accept the offer that day, a Friday, but asserts the court gave him until Monday to make a decision. Defendant stated that Sanzone advised him to accept the offer and suggested he could consult with another attorney.

In his certification, defendant stated the plea hearing did not take place on Monday, July 2, 2012. However, on July 9, 2012, Liza told defendant she had retained new counsel, Lorraine M. Medeiros, over the previous weekend. Defendant asserted he did not meet Medeiros until November 5, 2012, during an appearance in the courthouse. During that meeting, defendant stated he told Medeiros he wanted to accept the ten-year offer. Medeiros advised him that the offer was seventeen years subject to NERA. According to defendant, when he

informed Medeiros there was a previous ten-year offer, she told him to sign the "trial papers" and she would "investigate[]" the plea offer.

Defendant stated he next met with Medeiros on the first day of jury selection in February 2013. When he inquired about the ten-year offer, Medeiros told him the State did not have a record of that offer.

After assigned counsel filed a brief in support of defendant's petition, defendant submitted a supplemental brief. After oral argument on the petition, the court granted an evidentiary hearing, to resolve the factual dispute whether the ten-year offer was a "package deal" to encompass the four outstanding indictments or only one of the indictments, as the State alleged.

Defendant, Sanzone, and Medeiros testified at the hearing. Sanzone stated he represented defendant on three indictments during plea negotiations on June 29, 2012. He recalled the State extending the ten-year offer as "a complete package on all [three] indictments." Sanzone told defendant it was a "great deal" and he should take it. Sanzone also suggested defendant seek the advice of another attorney. According to Sanzone, defendant asked for some time to think about the offer and discuss it with his wife. Sanzone recalled the court giving defendant a week to consider the offer.

Sanzone further testified that several days later he received a call from Liza, advising him he was no longer defendant's attorney; she had retained Medeiros. Sanzone stated Medeiros never called him to discuss the case or the plea offer. During cross-examination, Sanzone conceded defendant did not accept the ten-year offer.

According to defendant there were four open indictments. He testified consistently with his certification as to the events of June 29, 2012. He admitted he did not accept the ten-year offer but believed he had until he returned to court on July 2, 2012 to decide. Defendant added that after he told Medeiros on November 5, 2012 that there was a pending ten-year offer, she spoke to the State. Later that day, the State conveyed an offer of thirteen years imprisonment subject to NERA (thirteen-year offer). Defendant stated Medeiros told him to reject that offer so she could investigate the ten-year offer. He advised he would have accepted the thirteen-year offer in November if the ten-year offer was no longer available because he did not want to go to trial.

Medeiros testified she was retained by Liza to represent defendant on four indictments in July 2012. She thought she first met with defendant in the jail in August and stated she "extensively" met with Liza who frequently came to Medeiros' office. Medeiros stated she had difficulty obtaining the file from

Sanzone and eventually she went to his office to pick it up, providing a check for the copying costs. Medeiros stated she was never informed by anyone, including defendant, that the State had previously extended a ten-year offer. She believed the last offer was thirteen years subject to NERA to resolve all of the indictments.

Medeiros stated defendant rejected the seventeen- and thirteen-year plea offers and he expressed no interest in accepting any plea offer. According to Medeiros, defendant thought he was not culpable because of his drug addiction during the time he committed the offenses. Medeiros testified she advised defendant to accept the thirteen-year plea offer.

Before the close of the evidentiary hearing, the PCR court noted the statement made by the prior judge on June 29, 2012: "So just as long as you go in on Monday with your eyes wide open as to everything, you know, I'll certainly accept whatever decision you make. . . . But, boy, I just want to make sure that you know you're turning down that 10/85."

The PCR court issued a comprehensive well-reasoned oral decision on October 31, 2018 denying the PCR petition. The court found Medeiros credible, "consistent," "direct," and "forthright," stating, "[s]he seemed to have an

excellent recollection of the discussions she had had with defendant including during jury selection and about his being adamant about not wanting to testify."

In considering Sanzone's testimony, the PCR court described him as "clear, consistent for the most part, and insistent." However, the court found Medeiros more credible than Sanzone in her testimony that she contacted Sanzone on numerous occasions without any response. The court rejected Sanzone's testimony that Medeiros never reached out to him.

In contrast, the PCR court found defendant was not a credible witness, noting he was inconsistent and would not answer questions with a direct answer. Specifically, the court found defendant was not credible in his testimony that he "told Sanzone that if Sanzone was sure about the 10-year plea offer, then . . . defendant . . . would take it." The court stated further: "That is not what happened on June 29, 2012. Even Sanzone testified that had defendant been given the extra time to consider the offer, he probably would have taken it. Not definitely. Probably. Even Sanzone didn't know if [defendant] would have taken the plea."

The PCR court referred to Sanzone's and Medeiros' testimony that Liza was an "integral part of the process," stating it was "far more believable that both defendant and his wife [were] unhappy with Sanzone's representation as

A-2289-18T4

Medeiros testified [and] hoped or believed that another attorney could do better than the 10 years with 85 percent to resolve all of . . . defendant's cases."

In addressing defendant's assertions of ineffective counsel, the PCR court found "defendant was reluctant to take the . . . ten years offered to him on June 29[] and July 2, 2012," noting it was "an extremely generous offer given that defendant had committed not one but two first[-]degree robberies and had two additional indictments . . . ."  Relying on Medeiros' testimony, the court found defendant did not accept the ten-year plea offer on June 29, 2012 or any time thereafter because he wanted a better offer.

The court also rejected defendant's contention that he would have taken the plea offer on July 2, 2012 but he was not given the opportunity to do so because he was not brought to court that day.  Having listened to the July 2, 2012 CourtSmart recording, the court stated there was "[n]o question about it." Defendant was in court and was represented by Sanzone.  However, defendant did not take the plea "even though Mr. Sanzone and [the judge] did everything they could to persuade him to do so."

The court also noted defendant spoke directly to the former judge numerous times in the courtroom during motion hearings and the plea negotiation process.  Therefore, when defendant rejected the thirteen-year offer

A-2289-18T4

in November 2012, it was not credible that he did not raise the issue of the previously-extended ten-year offer. The court concluded that defendant never told Medeiros about the ten-year offer because he knew that offer was no longer available. "Therefore, Medeiros could not be ineffective for not securing a [plea] for . . . defendant that she was not told about by him." The court concluded defendant had not established the first prong of the Strickland-Fritz test.[1] Finally, the PCR judge advised she had reviewed the trial transcripts and found Medeiros was "well prepared for . . . trial, had a strategy to show that . . . defendant was only guilty of a second[-]degree robbery and argued vigorously on [his] behalf . . . ."

On appeal, defendant presents a single issue for our consideration:

> THE PCR COURT SHOULD HAVE RULED THAT MR. GIULIANO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL'S INACTION PREVENTED HIM FROM ACCEPTING A FAVORABLE PLEA OFFER

The standard for determining whether trial counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland, 466 U.S. at 687, and adopted by the New Jersey Supreme Court in Fritz, 105

---

[1] Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).

N.J. at 58. In order to prevail on a claim of ineffective assistance of counsel, defendant must meet the two-pronged test establishing both that: 1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and 2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

In our review of a PCR court's determination, we defer to the court's factual findings, including credibility determinations, if they are supported by "adequate, substantial and credible evidence." State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

We affirm substantially for the reasons given in the PCR court's cogent decision. We add only the following brief comments.

Defendant did not accept the ten-year plea offer on either June 29 or July 2, 2012. Instead, he terminated Sanzone and retained Medeiros as his new counsel. When defendant appeared in court with Medeiros in November 2012, defendant told the judge directly that he was not interested in a seventeen-year offer. He also rejected a subsequent thirteen-year offer. Defendant never told

A-2289-18T4

the judge or his attorney there was an open ten-year offer. Given our deference to the PCR judge's credibility findings, we are satisfied defendant has not established Medeiros provided ineffective counsel.

The PCR court's denial of the petition was supported by the credible evidence in the record. Defendant did not demonstrate trial counsel was ineffective under the Strickland-Fritz test.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2289-18T4